## CLINTON WHITTEN v. STATE OF MISSISSIPPI.

### [48 South. 402.]

CRIMINAL LAW AND PROCEDURE.  *Murder.  Jury.  Sheriff's undue influ-
ence.  Close case on facts.*

Where the sheriff was so interested in a prosecution for murder
that he spent a large sum of his own money in procuring the de-
fendant's arrest and aided the district attorney during the trial
in selecting the jury, advising whom to challenge and whom to
accept, and the jury was composed in part of talesmen summoned
by his deputies from localities in which the sheriff was personally
popular, a conviction will be set aside and a new trial granted
because of his undue influence, in a close case on the facts, the
evidence being delicately balanced.

FROM the circuit court of Quitman county.

HON. SAMUEL C. COOK, Judge.

Whitten, appellant, was indicted and tried for and convicted
of murder, and appealed to the supreme court.

Appellant and deceased visited a gambling house on the
night of the homicide.  The killing occurred on the second
floor of the building, and there was but one eyewitness, a

woman, who escaped, and could not be found to be used as a witness. Persons at the time on the first floor of the building heard scuffling overhead followed by a pistol shot, and immediately afterwards appellant ran down the stairway, and, in response to an inquiry, stated that he had killed deceased. He immediately fled, but was subsequently captured and put on trial. The evidence showed that the deceased was found dead with a bullet hole entirely through his head. His pockets had been rifled of everything of value, and he had no weapon. The defendant testified, and his testimony made out a case of justifiable homicide.

The record fails to disclose any affidavit of defendant, or of his counsel, as a basis for the new trial because of the sheriff's acts mentioned in the opinion. The facts touching the manner in which the jury was selected, the part taken therein by the sheriff and his interest in the prosecution, are stated in the opinion of the court.

*Williams & Simpson,* for appellant.

The defendant did not have a fair and impartial jury, and, under the circumstances could not procure one. Counsel for defendant were willing to go to trial with a jury of Quitman county citizens; provided the sheriff would not use his office to prosecute; for counsel well knew that the sheriff had created a strong sentiment against the defendant at Marks and Lambert and along the line of the railroad generally and if he chose could select a prejudiced jury from those men to whom he had related how much he had paid out of his own pocket and other circumstances in the case, the sheriff having acted as deputy sheriff at the inquest.

Before announcing ready for trial counsel for defendant exacted a promise from the sheriff, T. P. McArthur, that he would not assist in the prosecution during the trial in any way; but would summon a jury of good and intelligent men and leave the issue up to them. That a sheriff should sit beside the dis-

trict attorney and assist him in the presence of the jury is, in truth, bad enough and bound to influence the jury, especially in a small county where the sheriff wields a much more powerful influence than in a large and populous county; but this was not the end of the mischief. Only four jurors who sat on the trial were selected before the exhaustion of the special venire and regular panels, and then the sheriff was ordered to go out and select talesmen. The sheriff testifies that to him was left the decision as to whether a juror was allowed to remain or be rejected, and this, coupled with the fact that he summoned the jury, made it a jury absolutely selected by the sheriff alone, for what did it avail the defendant to set aside men when the sheriff went forth and summoned such others as suited him. We submit that it is unlawful for an officer to act as this one admits that he did, whether his interest in the conviction be pecuniary, over anxiety to convict, or any other interest, and that if such course is lawful, then, in the small counties of the state, the sheriff has it in his power to pack a jury and convict any man charged with crime where there is a fair division of sentiment on the question of his guilt or innocence, and there usually is such a division. The sheriff very frankly says that if he had not helped the district attorney the defendant would have been acquitted and that there would have been no case against the defendant, and this in spite of the fact that the sheriff, with his full acquaintance with the county could have summoned talesmen of good, solid, and intelligent citizens above reproach and left the issue to them. It will be noted that the talesmen, with the exception of one or two, lived at Marks and Lambert. The home of the sheriff is at Marks. Marks and Lambert are little towns on the railroad situated respectively four and seven miles from the killing.

Had we not believed the sheriff when he stated that he would give us a fair jury from the whole county, we would have accepted the offer of the court to grant a continuance with bond. The sheriff broke faith and then pursued the course above outlined.

---

Opinion of the court.

---

We submit further, that the mere presence of the sheriff in the office of an active prosecutor of the defendant, in full view of the jury in the process of selection and plainly to be seen assisting the district attorney could not fail to have a very great weight with the jury against the defendant.

For cases in point see: 12 Cyc. 711; *Shaw v. State,* 79 Miss. 577, 31 South. 209; *State v. Howes,* 26 W. Va. 110.

For cases in line see *Wilkerson v. State,* 78 Miss. 356, 29 South. 170; *Brown v. State,* 69 Miss. 398, 10 South. 579; *Shaw v. State,* 79 Miss. 577, 31 South. 209.

*George Butler,* assistant attorney-general, for appellee.

There was no motion made to displace the sheriff, as might have been done if he was a partisan under Code 1906, § 893, as construed in *Limpscomb v. State,* 76 Miss. 244, 25 South. 158. The district attorney was a stranger in the county and knew none of the jurors. He told the sheriff he wanted only impartial men and that he would exclude any one who had expressed an opinion favorable to the state. He did in fact challenge some of the panel contrary to the advice of the sheriff and refused to challenge some he was advised to challenge. There is no hint in the record that the panel was not free and impartial. The sheriff had talked to no one who served. There was no objection made at the time of the method in which the jury was selected though appellant was fully advised in the premises, therefore the objection coming after verdict was too late.

This case is controlled perfectly by the principles laid down in *Posey v. State,* 86 Miss. 144, 38 South. 324, and *Cook v. State,* 90 Miss. 137, 43 South. 618.

Argued orally by *T. E. Williams,* for appellant, and by *George Butler,* assistant attorney-general, for appellee.

FLETCHER, J., delivered the opinion of the court.

This case is exceedingly close, not to say unsatisfactory, on its facts. No eyewitnesses testified except the defendant, whose evi-

·dence makes out a clear case of self-defense. To offset this testimony, the state relied upon certain physical facts and circumstances, which were thought to suggest guilt. Certain witnesses testified that they believed that deceased was shot in the back of the head, since the bullet hole in the rear was smaller than in front, and because the hair seemed to be "tucked" into the wound in the back of the head. The observations of these witnesses, however, were all made before the blood was washed from deceased's face. After the blood had been washed off, several apparently reputable witnesses testified that there were unmistakable powder burns on the face, indicating that the shot had come from in front in harmony with defendant's theory. The pockets of the dead man had been rifled, but it is not unreasonable to suppose that this had been done by the abandoned woman, who was an habitué of the loathsome dive in which this killing occurred. The defendant fled after the homicide, but this, though competent, of course, is not a very weighty circumstance in this case. The scuffling sound heard by the witness McArthur and the ready proclamation made by defendant immediately after the shooting are not easy to reconcile with the theory of assassination and robbery. We make these observations to show that the case was delicately balanced, and therefore one in which error counts for much.

It was shown on the motion for a new trial that the sheriff had spent a large sum of money from his private purse to secure the capture of defendant; that he was selected by certain indignant and interested citizens to aid the district attorney in the selection of the jury; that he sat by the prosecuting officer while the jury was being selected, and suggested what jurors to accept and what jurors to reject; that the jury was formed in part, at least, from talesmen summoned by the sheriff through his deputies, after the regular panel and the special venire had been exhausted; and that these talesmen were selected in large measure from the towns of Marks and Lambert, where the sheriff was shown to be personally popular. The sheriff, a

.gentleman of great candor and of unquestioned honesty of purpose, states that but for him the prosecution would have amounted to very little, or words to that effect.

In this close case we think the defendant carried too great a burden in having his case submitted to a jury composed of the sheriff's friends, virtually chosen by him, and who had every opportunity to conclude that that officer was actively participating in the prosecution. We are not to be understood as holding that a district attorney may not confer with the sheriff, as he may with any other officer or citizen as to the personnel of a jury; but we do hold that where the scales are so delicately poised that the weight of a hair would turn the balance, it is burdening the defendant too grievously to try him with a jury so selected, with the sheriff's partisanship so glaringly apparent.

*Reversed and remanded.*